MARYLAND CASUALTY CO. ET AL. *v.* LAUREL OIL & FERTILIZER CO.

[76 South. 875, Division B.]

1. INSURANCE. *Actions. Question for jury. Peremptory instruction.*

In an action by an employer against a casualty company on its policy to indemnify such employer for all loss of money, etc., constituting larceny or embezzlement by an employee, it was improper for the court to grant a peremptory instruction for the employer, where the employee gave testimony which if true showed that the shortage in his accounts did not come about by any act of larceny or embezzlement on his part.

2. SAME.

In such case it was improper for the court to exclude testimony offered by the employee showing that he had not embezzled or stolen any of his employer's money or property.

3. INDEMNITY INSURANCE. *Requirement that insured prosecute.*

It is a reasonable contract where one party is insuring against acts constituting larceny or embezzlement to stipulate that the assured shall give information and institute prosecution, when required to do so, of all offenses on the part of the employee insured against.

4. Pleading. *Withdrawal of plea. Abandonment of defense.*

     Where in an action by a fertilizer company against a casualty company on its policy to indemnify for loss sustained by larceny or embezzlement of employees, the casualty company filed a plea setting up that it was unlawful for the fertilizer company to operate a gin after the passage of chapter 162, Laws 1914, but withdrew the plea though it moved to strike out the evidence and grant it a peremptory instruction, basing the statute as a ground therefor. In such case the court had a right to treat the defense as having been abandoned with the withdrawal of the plea.

Appeal from circuit court of Jones county.

Hon. P. B Johnson, Judge.

Suit by the Laurel Oil & Fertilizer Company against the Maryland Casualty Company and others. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Chas. R. Shannon,* for appellant.

The Maryland Casualty Company filed its demurrer to the declaration in which it set out the following cause of demurrer: "First: Said declaration does not show that the money or property that plaintiff claims to have lost while in the possession of the said B. C. Cook, and for which loss plaintiff claims that the defendant is legally liable, was sustained by reason of any act or acts constituting larceny or embezzlement, committed by the said B. C. Cook."

We contend here, and also contended in the lower court, in behalf of the Maryland Casualty Company, that the plaintiff in its declaration should allege that the loss for which plaintiff has brought suit, was sustained by reason of act or acts constituting larceny or embezzlement, committed by said B. C. Cook. That it was not only necessary for the plaintiff to make these allegations in its declaration, but that it should have also made the proper proof.

A loss by carelessness or inattention to business might be the foundation of a just claim against said Cook by the Laurel Oil & Fertilizer Company, but it would certainly impose no liability on the Maryland Casualty Company, by the terms of the bond sued on.

This question was gone into quite fully in the case of *Monongahela Coal Co.* v. *Fidelity & Deposit Co. of Maryland*, decided by the United States circuit court of appeals for the Fifth circuit court district, and which is reported in the 94th Federal Reporter on page 732.

After the court overruled the demurrer of the defendant, Maryland Casualty Company to the declaration filed, by the plaintiff, it, the Maryland Casualty Company, filed a plea of general issue, also eight special pleas to the declaration.

The plaintiff, interposed its demurrer to the fourth special plea filed by this appellant, which set out the following condition of the bond, and breach of the same by appellee: "That the employer shall, if required by the company, and at the expense of the company, use all diligence in prosecuting any employee guilty of an act entailing liability upon the company under this bond, civally or criminally, as may be allowed under sustained loss, and give all information at its disposal, and all assistance in its power to assist and aid the company in any suit brought by the company to obtain reimbursement from the employee or his estate or any one else in the premises, for moneys which the company may have paid or become liable to pay by virtue of this bond."

The plea further set out a written notice served on the appellee requesting it to comply with the terms and conditions of the bond, and immediately lay information before the proper officials for the arrest of Mr. Cook, if appellee claimed any loss under the bond by virtue of his acts constituting larceny and embezzlement. The plaintiff interposed a demurrer to this fourth special plea, which was in these words:

"1st. Because that part of said indemnity bond set out in the fourth special plea is contrary to law and public policy, and is therefore void and of no effect and not binding upon this plaintiff. 2nd. That even if the

said clause set out is binding upon this plaintiff, it does not require him to prosecute this employee, B. C. Cook criminally, but only requires that the Laurel Oil & Fertilizer Company, the plaintiff, give such assistance and information to the defendant as it has at its disposal. 3rd. Because the plea sets up no defense known to law. 4th. For other grounds to be assigned on the hearing hereof.''

The court sustained said demurrer of plaintiff to this defendant's fourth special plea, and dismissed the fourth special plea, to which action of the court this defendant excepted, and has assigned as one of the errors of the court on the trial of the case in the court below. We fail to see how the agreement in this policy made by the appellee with the appellant to prosecute the employee, who had caused the loss by his acts of larceny and embezzlement, should be contrary to public policy, or in violation of law, as set out in plaintiff's demurrer to the fourth special plea of this defendant. *London Guaranty Co.* v. *Fearnley,* L. R. 5, Cas. 911; *Union Pacific Tea Company* v. *Union Surety Company etc. Co.,* 36 N. Y. Suppl. 486; 14 R. C. L., page 144, note 14.

*A. B. Schauber,* for appellant, Cook.

We think the facts set out here are clearly in violation of chapter 162 of the Laws of Mississippi of 1914, part of which is as follow:

''Section 11. Be it enacted by the legislature of the state of Misissippi, that it shall be unlawful for any corporation created under the laws of this state, or authorized to do any local business in the state under the laws thereof to own, buy, lease, rent or otherwise acquire any cotton gin or any interest therein or to manage, use, control or operate the same, where such corporation is now, or may hereafter become interested in, the opera-

tion, ownership, management, control or participate in the manufacture of any cotton seed oil, or any its products; or in the manufacture of cotton seed meal, hulls or other cotton seed products or by-products, or which owns, operates, manages or in any manner controls or has any interest in any compress business concern or coroporation.''

The penalty fixed by this act for the violation of the same is a fine of not less than one hundred dollars or more than five thousand dollars. There is also an exception set out in said act, which is as follows: ''A concern prohibited by this act from owning or operating gins is at liberty to dispose of said gins for cash or credit within a reasonable time after the passage of this act, and to operate such gins until sold within such time.''

This act was approved March 28, 1914, and was to take effect and be in force from and after its passage. If there is any one proposition of law definitely settled in this state, we think it is that contracts that are made in. violation of law, or violation of statute prohibiting the same, regardless of whether there is a penalty attached to the statute or not, are null and void. In the case of *Quartette Music Co.* v. *Haygood et al,* decided by this court on February 5, 1915, reported in 67 So. 311, Mr. Justice Cook quotes with approval the decision of this court in the case of *Bohn* v. *Lowery,* 77 Miss. 427, as follows:

''Every contract made for, or about, any matter or thing which is prohibited and made unlawful by any statute, is a void contract, though the statute itself does not mention that it shall be so, but only inflicts a penalty on the defaulter because a penalty implies a prohibition, though there are no prohibitory words in the statute.'' *Woodson* v. *Hopkins,* 85 Miss. 171, 37 So. 1000, 38 So. 298. 70 L. R. A. 645, 107 Am. St. Rep. 275.

. It is true that under the exception set out in chapter 162 of the Laws of 1914, an oil mill is permitted to operate gins that it owns until it has had reasonable time to dispose of the same, still the exception does not permit an oil mill to lease and operate a gin it does not own after the passage of said act, as is shown by the testimony, was done by appellee in this case. We respectfully submit that for this reason the court should have excluded the testimony offered by the plaintiff and directed the jury to find for appellant, B. C. Cook.

*W. J. Pack,* for appellee.

While appellant assigns many grounds of error in his assignment of error, he stresses but five points in his brief and we will undertake to discuss them in the order in which they appear in his brief.

(1)   That the declaration does not sufficiently charge that Cook was guilty of larceny or embezzlement. A mere reading of the declaration we take it, will be a complete answer to this point. We submit that not only does the declaration amply charge that a loss was sustained by embezzlement but that the proof is sufficient to make out a *prima-facia* case of embezzlement under note "E" of the case of *First National Bank* v. *Fidelity Insurance Company,* 100 American State Report, page 786; *Champion Ice, etc. Company* v. *American Bonding, etc. Company,* 25 Ky. Law Report 239, 75 S. W. 196; *City Trust, etc. Company* v. *American Bonding etc., Company,* 25 Ky. Law Reports 239, 75 S. W. 196; *City Trust, etc., Company* v. *Lee,* 204 Ill. 69, 68 N. E. 485.

(2) Did the lower court err in sustaining plaintiff's demurrer to the fourth special plea which challenged the right of plaintiff to maintain this suit because no affidavit was made against Cook?

The policy is a contract that the authorities have held to be an insurance contract. It has been held: That the general principle governing the older forms of insurance

losses, as fire, marine, and life are applicable to this more modern form of insurance." *People* v. *Fidelity & Casualty Company,* 143 Ill. 25, 38 N. E. 752, 26, L. R. A. 295; *People* v. *Rose,* 174 Ill. 310, 49 L. R. A. 124. In the exhaustive note found on page 774 of 100 American State Report under the title, Fidelity Insurance, the rule is laid down and supported by many authorities there cited. "That courts have adopted even a more liberal policy in upholding a contract avoiding the technicalities of construction that have to some extent, been unfavorable to the proper interpretation of other contracts of insurance." And also that: "If looking to all the provisions of the bond, it is fairly and reasonably susceptible of two considerations, one favorable and the other unfavorable to the Insurance Company, the latter is to be adopted for the reason that the instrument was drawn by the attorneys, officers or agents of the Insurance Company; ambiguities must be construed most strongly, against the insurer." Considering this point raised in the case and looking at the policy as drawn by appellant or its agents or attorneys, what must have been the intention of appellant when this part of the policy was drawn? Was it that as a condition precedent to a suit upon the bond, that the insured should actually lodge an affidavit against the employee charging him with larceny or embezzlement, or that it should do as the policy really contemplated, to wit: "Assist in prosecuting the employee."

In order that the substance of each and every paragraph of the bond might be succinctly stated and easily understood by its customers, the writer of the bond had printed upon the margin thereof the caption of what was contained in each paragraph and opposite the paragraph now in question we find the following words: "Employer to assist in prosecuting employee." The demurrer to the special plea raised the point that the plea went further than the requirement of the bond,

and that a fair interpretation of the bond only required the appellee to assist the appellant in the prosecution of the employee, and upon the trial of the case the proof showed that the appellant first resorted to one excuse and then another for its refusal to make good the bond. The exhibit to said special plea, Record 35, shows that appellant was demanding of appellee, before the payment of the bond, or even consider its payment, should do even more than the bond required it to do, to wit: "Lay information before proper officials for the arrest of Mr. Cook." It was using this as a double club with which to beat back appellee in pursuing its remedy upon this bond. Said exhibit, made a part of said special plea shows that although defendant denied liability upon said bond it still wanted as a condition precedent that Cook be arrested. Complying with the conditions of the bond to make proof of affidavit, etc., of the loss, appellee had submitted its proof and was met with the statement as shown in said exhibit. "We have advised you that this proof does not evidence a loss coming under the terms and conditions of our bond; even though it might be conceded that said requirement in the bond is not against public policy, yet, since said appellee went further than the bond itself, upon a fair interpretation, the court was warranted in sustaining the demurrer upon other grounds.

ETHRIDGE, J., delivered the opinion of the court.

The Laurel Oil & Fertilizer Company manufactures cottonseed oil and meal in Laurel, Miss., and maintains agencies for the buying and selling of its products in other places. Among the places at which it maintains an agency is Bassfield, in Jefferson Davis county, Miss., where, in 1914, it operated a cotton gin and sold hulls, cottonseed meal, and phosphates, and exchanged such products for cottonseed, and ginned and wrapped cotton for hire.

Among the employees of this company was B. C. Cook, who was manager of its gin and its agent at Bassfield. The Laurel Oil & Fertilizer Company took out an indemnity policy with the appellant the Maryland Casualty Company, and among other employees whose fidelity was guaranteed was the defendant B. C. Cook. The policy as written provided that the insurance company, the appellant, would indemnify and reimburse the employer, the appellant, for all loss of money, securities, or other personal property of the employer which shall have been sustained by reason of any act or acts constituting larceny or embezzlement by any employee for which the insurance company is surety. It further provides that the employer shall, if so required by the company, and at the cost and expense of the company, use all diligence in prosecuting any employee guilty of an act entailing liability upon the company, civilly or criminally, as may be allowed under the existing laws, and to give all information at its disposal and all of the assistance in its power to bring the employee to justice, and to aid the company in any suit brought by the company to obtain reimbursement from the employee or any one else in the premises for moneys which the company may have paid or become liable to pay by virtue of the bond. It was further provided that if at any time during the life of the bond the employer shall discover or in any way learn of any act or fact or receive any information tending to indicate that any employee is or may be intemperate, or that any employee may be gambling or indulging in other vices, the employer shall immediately give notice thereof by letter addressed to the company; that any condoning of any such acts, or compromise of any loss shall not be made by the employer without the written consent of the company, and that the company shall not be liable for any loss subsequently incurred through the act of such employee, unless the company shall consent in writing. As an exhibit to the declaration was an itemized account of the money sought to be recovered, for cash, meal, and phosphate, bagging

and ties, and gin and bagging tie fees. The declaration alleged that two thousand and forty-six dollars was furnished the employee Cook, and that only one thousand eight hundred and twenty five dollars and twenty-seven cents was accounted for; that Cook had converted the balance to his own use, and demand had been made upon Cook for the money, which he had failed to pay.

The defendants demurred to the declaration, which demurrer was overruled, and pleaded the general issue and numerous special pleas. Among the special pleas filed the third alleged that the application for the bond for Cook contained a question to explain fully the duties of the said employee, and that the answer to this question was "Agent for the purchase of seed and handling our products;" and that the insurance company had no knowledge of the defendant's managing a gin or operating a gin in addition to the duties described in the application. To this plea it was replied that the operation of the gin was a mere incident to occupy the time of Cook while acting as agent and handling the plaintiff's products at Bassfield, and only required a small portion of his time. The fourth plea alleged that the contract of indemnity contained a warranty providing that "the employer shall, if so required by the company and at the cost and expense of the company, use all diligence in prosecuting any employee guilty of an act entailing liability upon the company under this bond, civilly or criminally as may be allowed under the existing laws, and give all information at its disposal and all the assistance in its power to bring the employee to justice, and to aid the company in any suit brought by the company to obtain reimbursement from the employee or his estate, or any one else in the premises, for moneys which the company may have paid or become liable to pay by virtue of this bond," and that the Casualty Company made written request of the Laurel Oil & Fertilizer Company to prosecute at the cost and expense of the casualty company the said Cook for any act of larceny or

embezzlement under its contract, and that the said Laurel Oil & Fertilizer Company declined to prefer charges and prosecute the said Cook criminally, when requested so to do by the appellant casualty company. The plaintiff demurred to this special plea on the ground that this provision was contrary to public policy and void, and that the clause referred to does not require the plaintiff, appellee, to prosecute Cook criminally, but only requires the company to give such assistance and information to the defendant as it has at its disposal. The manager for appellee testified to furnishing Cook with certain supplies and moneys contained in the account made an exhibit to the declaration, and testifies that Cook did not pay for the supplies furnished, and that Cook admitted that the account for two hundred and twenty dollars and seventy-three cents was correct. The manager did not testify to any act or fact that showed that Cook had actually converted to his own use the property consigned to him, but merely testified that he admitted the charge or amount due under the account was correct, but did not testify that he confessed to any embezzlement or larceny or the personal taking for his own use of property of the company. The traveling representative of the Oil & Fertilizer Company went to Bassfield and checked over the accounts with Cook, and procured Cook to sign a statement that the account exhibited was true and correct; but neither the manager nor the traveling representative testified to any act showing that Cook actually used or converted any of the money to his own use, or that he made any confession of theft or embezzlement; the traveling representative merely stating that Cook said he could not account for the difference; that he thought he was entitled to some credits. Cook testified that he was not a bookkeeper and that he did not know whether the accounts of goods shipped him was correct or not, but he testified that on one occasion the building where the products of the appellee were stored was broken into and some of the products carried away. He

further testifies that he did not have sufficient help to run the gin and wait on customers, and that on some occasions he permitted customers to load their own wagons and weigh them, and that in certain instances the bagging for wrapping cotton would overlap or become torn and have to be replaced, and that this occasioned some shortage. In this attitude of the record the circuit court granted a peremptory instruction for the Laurel Oil & Fertilizer Company, except as to seven dollars and fifty cents embraced in the account, which the proof showed was furnished to Cook's wife.

We think there was error in granting this peremptory instruction, because, if Cook's testimony was true, a shortage did not come about by any act of larceny or embezzlement on the part of Cook.

The court also committed error in excluding certain testimony offered by witness Cook, stating that he had not embezzled or stolen any of the property.

We think it was error to sustain the demurrer to the plea of defendant that the Oil & Fertilizer Company refused to file an information and prosecute Cook, though requested in writing by the Casualty Company to do so. It is not contrary to the public policy of this state for a citizen to make an affidavit charging another citizen with crime who is guilty thereof. It is rather the public policy of this state to have crime prosecuted, and each citizen of the state has a right to make an affidavit of any offense against the public law coming to his knowledge. It certainly is not contrary to public policy to prosecute criminals, and it is a reasonable contract where one party is insuring against acts constituting larceny or embezzlement to stipulate that the assured shall give information and institute prosecutions, where required to do so, of all offenses on the part of the employee insured against.

We do not deem it necessary in this case to pass upon the question whether it was lawful for the Laurel Oil & Fertilizer Company to operate a gin after the passage of

chapter 162, Laws of 1914, nor what effect that law would have upon the contract rights in a suit of this kind.   The appellant filed a plea setting up these facts, but withdrew the plea, and though he made the motion to strike out the evidence and grant a peremptory instruction, basing this as a ground therefor, we think the court had a right to treat this defense as having been abandoned with the withdrawal of the plea.   If the plea had remained in the file and been insisted upon, it might have been answered, and certain testimony might have been introduced which would not be relevant under the issues made by the present pleadings.

For the errors indicated, the judgment will be reversed, and the cause remanded.

*Reversed and remanded.*